UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| COASTAL COUNTIES | ) |
| WORKFORCE, INC., | ) |
| Plaintiff, | ) |
| v. | ) 1:17-cv-00417-JAW |
| PAUL R. LEPAGE, et al., | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR ATTORNEY FEES OR TO ENFORCE SETTLEMENT AGREEMENT**

In this petition for attorney's fees and costs pursuant to the fee-shifting provision of 42 U.S.C. § 1988(a), the Court grants and denies the petition in part. The Court resolves disputes about whether the Defendants entered into an enforceable settlement agreement on attorney's fees, the proper hourly rates for attorneys and paralegals for the main case and for the attorney's fee petition, objections about duplicated and excessive time, carve-out fees for legal work upon which the Plaintiff did not prevail, and allocation of work among attorneys and paralegals within the law firm.

I. **BACKGROUND**

   A. **The Coastal Counties Workforce, Inc. Lawsuit**

   On October 24, 2017, Coastal Counties Workforce, Inc. (CCWI) filed a lawsuit against Paul R. LePage, Governor of the state of Maine, and John Butera, Commissioner of the state of Maine Department of Labor, asking this Court to issue

an injunction to force the Governor and Commissioner to turn over Workforce Innovation and Opportunity Act (WIOA) funds to CCWI. *Compl.* (ECF No. 1). With the Complaint, CCWI filed a motion for a temporary restraining order (TRO). *Pl.'s Mot. for TRO* (ECF No. 3). After the Defendants released some funds, CCWI dismissed its motion for a TRO and CCWI elected to proceed with a motion for preliminary injunction. *Order* (ECF No. 13).

On November 17, 2017, CCWI filed a motion for a preliminary injunction. *Pl.'s Mot. for Prelim. Inj.* (ECF No. 16). The issue was rapidly but thoroughly litigated, and on January 3, 2018, the Court issued an order on the Defendants' motion to dismiss and on CCWI's motion for preliminary injunction. *Order on Mot. to Dismiss and Mot. for Prelim. Inj.* (ECF No. 42). The Court denied the Defendants' motion to dismiss, dismissed CCWI's motion for preliminary injunction as applied to PY16 funds, and granted it as applied to PY17 funds. *Id.* at 63-64. On January 11, 2018, the Court issued a formal order, granting CCWI's request for injunctive relief for the PY17 funds. *Order on Pl.'s Req. for Inj. Relief* (ECF No. 45).

On the same day, the Defendants filed an interlocutory appeal and a motion to stay the Court's order. *Notice of Appeal of Defs. Paul R. LePage and John Butera* (ECF No. 46); *Defs. Paul R. LePage and John Butera's Mot. for Stay Pending Appeal* (ECF No. 47). On January 24, 2018, the Court denied the motion to stay. *Order on Mot. to Stay* (ECF No. 53). CCWI and the Defendants entered into a Subrecipient Award Agreement for distribution of the PY17 WIOA Funds and the parties agreed that the Court could issue a permanent injunction in accordance with the

Subrecipient Agreement; on March 1, 2018, the Court did so. *Order on Pl.'s Req. for Permanent Inj. Relief and Pl.'s Mot. to Consolidate* (ECF No. 64). On March 1, 2018, the Court entered an order of dismissal and a judgment of dismissal was entered without prejudice. *Order of Dismissal* (ECF No. 65); *J.* (ECF No. 66). On March 2, 2018, the Court of Appeals for the First Circuit dismissed the appeal upon the parties' joint motion, *J.* (ECF No. 68), and on the same day, the First Circuit issued its mandate. *Mandate* (ECF No. 69).

### B. The Coastal Counties Workforce, Inc. Motion

On March 31, 2018, CCWI moved for an award of attorney's fees. *Pl.'s Mot. to Enforce Settlement Agreement or, in the Alternative, Mot. for Att'y's Fees and Costs* (ECF No. 70) (*Pl.'s Mot.*). On May 8, 2018, the Defendants filed their opposition. *Defs.' Opp'n to Mot. to Enforce Settlement Agreement* (ECF No. 77) (*Defs.' Opp'n*). On May 22, 2018, CCWI filed its reply. *Pl.'s Reply in Support of Mot. to Enforce Settlement Agreement or, in the Alternative, Mot. for Att'y's Fees and Costs* (ECF No. 78) (*Pl.'s Reply*).

## II. THE POSITIONS OF THE PARTIES

### A. CCWI's Position

In its motion, CCWI asks the Court to enforce a settlement agreement between the parties in the amount of $134,000 plus $14,818.53 in additional fees incurred after the settlement agreement (for a total of $148,818.53) or to order the Defendants to pay CCWI's attorney's fees and litigation expenses in the total amount of $155,771.63.

3

### B. The Defendants' Position

The Defendants acknowledge that they owe an attorney's fee but ask the Court to award a total of $111,091.53 for the merits phase and $6,399 for work associated with CCWI's pursuit of attorney's fees or a total of $117,490.53.

### C. CCWI's Reply

After eliminating some duplicate entries, reducing travel time to a half hourly rate, justifying other contested charges, and increasing its request for $4,226.50 for the legal work in its reply, CCWI reduced its demand for time and charges to $155,149.26.

## III. DISCUSSION

The Court finally resigned itself to the fact that such fine attorneys have not been able to find a way to compromise the $30,000 to $37,000 difference between their positions and require the Court to resolve this dispute in a written opinion. It would seem that a little flexibility on both sides was in order. The Court tugged on the motion for a time in hopes that the attorneys would alert the Court that they had resolved their differences. But hearing nothing and with the end of the year approaching, the Court is aware that law firms usually like to tidy up their books by the turn of the year and the Court assumes that this is one controversy the LePage administration might not want to leave for the Mills administration. The Court issues this opinion to resolve the parties' differences.

### A. Motion to Enforce Settlement Agreement

#### 1. Factual Background

CCWI's attorneys represent that on February 21, 2018, at the request of counsel for Defendants, they provided counsel for the Defendants with an itemized statement of fees and costs through February 20, 2018. *Pl.'s Mot.* Attach. 1, *Decl. of Kelly W. McDonald, Esq.* ¶ 7. The fees were $140,953.10. *Id.* ¶ 8. On Friday, February 23, 2018, counsel for the Defendants offered on behalf of the Defendants to pay $134,000 in full satisfaction of CCWI's fee claim. *Id.* ¶ 9. On Monday, February 26, 2018, Attorney McDonald conveyed CCWI's acceptance of the Defendants' offer. *Id.* ¶ 10. Attorney McDonald says that over the next two weeks, it became clear that the Defendants were not willing to comply with the fee settlement and that "[i]nformation provided to me indicated that Defendants' counsel were told that they had actual authority to enter into the fee settlement." *Id.* ¶¶ 12-13.

In response, the Defendants say that "due to a miscommunication between former counsel[1] for the Defendants and their clients, the alleged settlement offer that CCWI seeks to enforce was not made with actual authority." *Defs.' Opp'n* at 1. In a sworn declaration, Holly E. Lusk, the Chief of Staff for Governor LePage, stated that the fee issue was discussed among herself, Brent Davis, then counsel for the Governor, the Governor, the Commissioner of the Maine Department of Labor, and David Fitts, the Director of the state of Maine Risk Management Office. *Id.* Attach.

---

[1] Assistant Attorney Generals Nancy Macirowski and Susan Herman represented the Defendants from the outset of the case until April 2018. On April 2, 2018, they filed a motion to withdraw as counsel for Defendants, citing the Plaintiff's attempt to enforce the settlement agreement. *Mot. to Withdraw* (ECF No. 71). On April 4, 2018, the Plaintiff responded, indicating no objection to the motion to withdraw. *Pl.'s Resp. to Mot. to Withdraw* (ECF No. 73). On April 10, 2018, the Court granted the motion to withdraw effective fourteen days from the date of the order to give the Defendants an opportunity to obtain new counsel. *Order* (ECF No. 75). On April 17, 2018, Attorney Madeline K. Malisa, Chief Counsel in the Office of the Governor, entered her appearance on behalf of the Defendants. *Notice of Appearance* (ECF No. 76).

5

1, *Decl. of Holly Lusk, Esq.* ¶¶ 4-6. Ms. Lusk stated that "Mr. Davis and I were aware that the Governor—a named Defendant and client in the case—must approve the terms of any settlement proposal." *Id.* ¶ 8. Before the settlement proposal was submitted to the Governor, however, Mr. Fitts left Assistant Attorney General (AAG) Susan Herman a voice message that left AAG Herman with the mistaken impression that Mr. Davis had obtained the Governor's approval to settle the fee agreement. *Id.* ¶¶ 6-9.

In fact, the Governor had not had the chance to review or approve any settlement. *Id.* ¶ 10. When AAG Herman contacted Mr. Davis to let him know that a settlement had been reached with Attorney McDonald, it came as a surprise both to Ms. Lusk and Mr. Davis. *Id.* ¶ 12. Ms. Lusk had not seen any evidence that Mr. Davis indicated to AAG Herman that the Governor had approved the fee settlement. *Id.* ¶ 11. In Ms. Lusk's view, the confusion among Mr. Fitts, Mr. Davis, and AAG Herman was based "on a good-faith misunderstanding of conversations and messages they exchanged." *Id.* ¶ 14. Nevertheless, she says that "there is no question that the Governor did not himself authorize settlement in this case to me, Mr. Fitts, Mr. Davis, or Attorney Herman" and that the "attorneys thus lacked actual authority to settle this matter on behalf of the Defendants." *Id.* ¶ 17.

### 2. Discussion

Although the Plaintiff comes close to accepting the Defendants' position that the settlement agreement is not enforceable because the Defendants' attorneys did not have actual authority to make the settlement offer, CCWI does not come right out

and say it. *Pl.'s Reply* at 1-2. Under the doctrine of apparent authority, "third parties who detrimentally rely on an agent's unauthorized representations sometimes may hold the principal to the consequences of such reliance." *Malave v. Carney Hosp.*, 170 F.3d 217, 221 (1st Cir. 1999). However, for an attorney to bind a client, the apparent authority rule typically does not apply. *Id.* "[A] settlement agreement entered into by an attorney is ineffective if the attorney did not possess actual authority to bind the client." *Id.*

"The burden of proving actual authority . . . [is] on [the] plaintiff." *Sheldon v. First Fed. Sav. & Loan Ass'n of P.R.*, 566 F.2d 805, 808 (1st Cir. 1977). Under First Circuit law, if there is a genuine dispute about whether an attorney had actual authority to enter into a settlement, the court's "task is to resolve the dispute." *Bandera v. City of Quincy*, 344 F.3d 47, 52 (1st Cir. 2003). Sometimes a court may resolve the dispute without an evidentiary hearing. *Id.*

Here, based on the sworn declaration of Holly Lusk, the Court concludes that CCWI has not established that AAG Herman had actual authority to enter into the attorney's fee settlement and therefore, under the First Circuit rule, the settlement agreement is not enforceable because it was entered into without the actual authority of the client, namely Governor Paul R. LePage.[2] The Court will not enforce the settlement agreement.

B.   **Motion for Award of Fees and Costs**

   1.   **Entitlement to an Award of Fees and Costs**

---

[2]   As noted earlier, CCWI may have conceded this issue. *See Pl.'s Reply* at 2 ("CCWI accepts Ms. Lusk's representations regarding authority").

7

Preliminarily, CCWI asserts and the Defendants do not dispute that under 42 U.S.C. § 1988(b), CCWI as the prevailing party in the litigation under 42 U.S.C. § 1983 is entitled to have the Defendants pay their reasonable attorney's fees. *Pl.'s Mot.* at 1-2 ("Here, CCWI is the prevailing party because it sought and received judicial relief on its request for preliminary and permanent injunctions requiring the State Defendants to make PY17 WIOA funds available in accordance with the law"); *Defs.' Opp'n* at 2 ("Defendants do not dispute that, as the substantially prevailing party in this matter, [CCWI] is entitled to its reasonable legal fees pursuant to 42 U.S.C. § 1988").

## 2. The First Circuit Analytic Approach

The dispute is about the reasonableness of the fees. CCWI and the Defendants agree on the way a court must approach an attorney's fee request. In *Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992), the First Circuit described the proper approach. "Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The *Lipsett* Court wrote that a trial court should "compute the loadstar amount by ascertaining the time counsel actually spent on the case 'and then subtracting from that figure hours which are duplicative, unproductive, excessive, or otherwise unnecessary.'" *Id.* (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984)). The court "then applies hourly rates to the constituent tasks, taking

into account the 'prevailing rates in the community for comparably qualified attorneys.'" *Id.* (quoting *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 19 (1st Cir. 1988)). "Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Id.*

### 3. Hourly Rates

The Plaintiff's attorneys are billing at the following hourly rates: (1) Richard O'Meara—$410; (2) Michael Taister—$345; (3) Kelly McDonald—$325; (4) Rachel Sears—$250; and (5) Sage Friedman—$215. *Pl.'s Mot.* at 10. The Plaintiff is billing paralegals at hourly rates from $105 to $140. *Id.* The Defendants object to these rates. They urge the Court to allow an hourly rate of $350 for Mr. O'Meara, $300 for Mr. McDonald, $175 for Ms. Sears, and $170 for Mr. Friedman. *Defs.' Opp'n* at 8-9. The Defendants say that the paralegals should not be allowed to charge more than $95 per hour. *Id.* at 9.

This Court last addressed the hourly rate issue in 2016. *Archambault v. GC Servs. Ltd. P'ship*, No. 16-cv-00104-JAW, 2016 WL 6208395, 2016 U.S. Dist. LEXIS (Oct. 24, 2016); *Maine People's All. v. Holtrachem Mfg. Co., LLC*, No. 1:00-cv-00069-JAW, 2016 WL 5676887, 2016 U.S. Dist. LEXIS 135301 (D. Me. Sept. 30, 2016). In *Maine People's Alliance*, the Court fixed $350 as an hourly rate for exceptionally experienced counsel, $300 to most highly experienced counsel, $250 for most reasonably experienced counsel, $175 for associates, and $95 for paralegals. *Maine People's*, 2016 U.S. Dist. LEXIS 135301, at *19-22. The Murray, Plumb & Murray

9

legal work on the underlying case began on October 12, 2017 and continued until March 12, 2018. The Court takes into account that from the fall of 2016 to the fall of 2017, there was inflationary pressure on the hourly rates for Portland, Maine legal services, and noting the increase in the consumer price index for the 2016-17 for legal services of 5.1%, the Court rounded the increase down to 5% for ease of computation. *See News Release, Bureau of Labor Statistics, U.S. Dep't of Labor*, *Table 2* (Nov. 14, 2018). Applying this inflationary increase to the hourly rates the Court authorized in the fall of 2016, the results are: (1) $350 x 5% = $17.50 + $350 = $367.50; (2) $300 x 5% = $15 + $300 = $315; (3) $250 x 5% = $12.50 + $250 = $262.50; (4) $175 x 5% = $8.75 + $175 = $183.75; and (5) $95 x 5% = $4.75 + $95 = $99.75. The Court authorizes these hourly rates for purposes of this litigation. In *Archambault*, the Court allowed $200 as the proper hourly rate for pursuing the attorney's fee motion. Allowing for inflation, the rate is now $210. *Archambault*, 2016 U.S. Dist. LEXIS 146597, at *19-20.

The next question is which rate applies to which lawyer. Attorney O'Meara qualifies for the $367.50 rate; Attorneys Sears and Friedman qualify for the $183.75 rate for associates. Although the Plaintiff's motion mentions Attorney Michael Traister, Attorney McDonald's affidavit does not refer to his qualifications and in any event, in scanning the itemization, the Court found only one billing entry with the initials MDT, a March 21, 2018 conference of 0.40 hours for consulting with Attorney McDonald on the attorney's fee petition. *See Pl.'s Reply* at 3. Assuming the entry that the Court found for Attorney Traister is the only entry, the Court authorizes the

10

$210 rate to Attorney Traister's entry. Lastly, the Court views Attorney McDonald as having done exceptional work in an arcane and complicated area of law and authorizes him to charge at $315, the rate for highly experienced counsel.

The Court intimated the answer to the final question regarding hourly rates: whether an attorney's usual hourly rate applies to petitions for attorney's fees and in *Archambault*, the Court ruled that a maximum hourly rate of $200 should be available for attorney's fee petitions, a figure the Court increased due to inflation to $210. *Archambault*, 2016 U.S. Dist. LEXIS 146597, at *19-20. The Court allows a maximum of $210 for any attorney legal work in pursuing the attorney's fee petition.

4. **Time Expended**

   a. **The Plaintiff's Concessions**

In the Defendants' response, they questioned certain entries that in its reply, the Plaintiff conceded were inappropriate. The Plaintiff agreed that the bill should be reduced by $1,860 for duplicate entries and $325 for travel time at a half hourly rate. *Pl.'s Reply* at 4-5. The Court accepts the Plaintiff's concessions but notes that the amount of the reduction should itself be reduced to reflect the lower hourly rates the Court has authorized.

   b. **Fee Preparation in Merits Phase**

The Defendants objected to entries before February 21, 2018 related to the pursuit of the fee petition, all of which took place earlier in February. *Defs.' Opp'n* at 9. The Court calculates those entries to equal 7.4 hours and to include the work of Attorneys McDonald and Friedman as well as a paralegal. *Id.* In response, the

Plaintiff says that "there is no magic to the February 21, 2018 date," explaining that the date was "merely the date that CCWI provided a summary of fees to Defendants." *Id.* at 3.

The Court agrees with the Plaintiff. Here, on January 3, 2018, the Court issued an order denying the motion to dismiss and granting its motion for preliminary injunction, and on January 24, 2018, issued an order denying the motion for stay pending appeal. *Order on Mot. to Dismiss and Mot. for Prelim. Inj.* (ECF No. 42); *Order on Mot. to Stay* (ECF No. 53). By that time, the Plaintiff could reasonably conclude that it had prevailed at least in this Court and for the Plaintiff to do some preliminary research and work on its likely attorney's fee claim in February 2018 does not strike the Court as unreasonable.

### c. PY2016 Funding

The Defendants object to paying eight hours of attorney's fees directly attributable to the Defendants' decision to pay the PY2016 funds. *Defs.' Opp'n* at 11. As the Defendants recall it, they agreed "at the outset" to withdraw any threat to withhold the PY2016 funds, but even after they made this concession, the Plaintiff continued to press the issue, requiring the Defendants to perform extra, unnecessary work. *Id.* The Plaintiff disagrees with the proposed reduction. *Pl.'s Reply* at 5. First, the Plaintiff says that only a small part of its opposition to the motion to dismiss touched on PY2016 and in any event, it is impossible to separate out the claims for the PY2016 funds from the claims for the PY2017 funds since they were "inextricably linked." *Id.*

12

This is a complicated issue. The Plaintiff filed its lawsuit on October 24, 2017. *Compl.* (ECF No. 1). By letter dated October 26, 2017, the state of Maine Department of Labor informed CCWI that its PY2016 contract would not be terminated. *Defs. Paul R. LePage and John Butera's Mot. to Dismiss* at 4, n.5 (ECF No. 17). On November 17, 2017, the Defendants represented in their motion to dismiss that "[a]ll PY 2016 funds have been made available to CCWI," that "[a]s of October 26, 2017, the PY 2016 WIOA funds have been made available without restriction," and they urged the Court to dismiss as moot the claim for PY2016 funds. *Id.* at 4-5. In its November 29, 2017 response to the motion to dismiss, the Plaintiff opposed the dismissal of its claim for the 2016 WIOA funds. *Pl.'s Opp'n to Defs.' Mot. to Dismiss* at 13-15 (ECF No. 20). In their December 4, 2017 reply, the Defendants reasserted that the Plaintiff's claim for PY2016 funds was moot. *Defs. Paul R. LePage and John Butera's Reply Mem. in Support of Mot. to Dismiss* (ECF No. 23). In its January 3, 2018 order, the Court observed:

> On November 9, 2017, the Court held a second telephone status conference. *Min. Entry for Telephone Conference* (ECF No. 12). The Defendants agreed to make certain funds available to CCWI for Program Year 2016 (PY16), but the parties did not fully resolve the lawsuit, with funds for Program Year 2017 (PY17) still contested.

*Order on Mot. to Dismiss and Mot. for Prelim. Inj.* at 2 (ECF No. 42). As the Court noted in its January 3, 2018 order, the parties placed in the record a November 1, 2017 letter from Ed Upham, Director of the Bureau of Employment Services that affirmed that "PY 2016 funds . . . will be available until your contract end dates of June 30, 2018." *Id.* at 41. In light of this affirmation, the Court rejected the Plaintiff's

13

request for an injunction ordering the Governor and the Commissioner to live up to their promise to CCWI. *Id.* at 42 ("The Court does not see the need to order the Governor and the Commissioner to do what they—through a subordinate state official—promised to do"). The Court dismissed so much CCWI's motion for preliminary injunction as applied to PY2016 funds. *Id.* at 63.

Based on the fact that CCWI opposed the Defendants' motion to dismiss and urged the Court to grant injunctive relief on the PY2016 funds, and the Court granted the motion to dismiss on the PY2016 claim, the Court concludes that the Plaintiff did not prevail on this aspect of its lawsuit and is not entitled to a legal fee for work directly associated with that claim. The Court is not impressed with the Plaintiff's contention that it cannot separate out the work it did on the PY2016 claim as opposed to other work on the successful claims. A good faith estimate is all that is required, and the Court has every confidence that the able counsel at Murray, Plumb & Murray can make such an estimate, if they have to.

### d. Tasks Inappropriate for Level of Seniority

The Defendants object to senior level partners performing work that could be assigned to an associate or paralegal. *Defs.' Opp'n* at 10-12. The Court recently addressed a similar argument in *Tyrrell v. Berryhill*, No. 2:16-cv-00628-JAW, 2018 U.S. Dist. LEXIS 98054 (D. Me. Jun. 12, 2018). Broadly speaking, there is a difference between a lawyer performing secretarial work, such as file organization, and a lawyer performing legal work that an associate or a paralegal could perform. *Id.* at *9-13. The United States Supreme Court and the First Circuit have declined

14

to allow lawyers to bill for clerical tasks. *Missouri v. Jenkins*, 491 U.S. 274, 288, n.10 (1989); *Lipsett*, 975 F.2d at 940. But as the Court recently observed, "the . . . repeated insistence that the lines between a lawyer's and paralegal's work can be clearly demarcated runs contrary to what the Court understands is the modern practice of law, where the lawyer and the paralegal work as a team." *Tyrrell*, 2018 U.S. Dist. LEXIS 98054 at *17-18. The same can be said of lawyers, whether senior partners or new associates. Occasionally, an experienced lawyer will perform a legal task that an associate could conceivably perform, but the experienced lawyer brings efficiency and practicality to the task that often reduces the time necessary to accomplish the project.

Reviewing the itemized objections by the Defendants, the Court does not view any of the Defendants' objections as involving tasks a secretary could properly perform and it views the allocation of tasks among professionals (within some limits) as something a law firm can and must be able to decide for itself. "There is more than one way to allocate work in these matters and the allocation here appears to be one reasonable approach." *Haskell v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-289-GZS, 2012 U.S. Dist. LEXIS 58178, at *3 (D. Me. Apr. 24, 2012) (quoting *Pearson v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00252-DBH, 2012 U.S. Dist. LEXIS 23359, at *4-5 (D. Me. Feb. 17, 2012)). The Court overrules the Defendants' objections on this issue.

### e. Unexplained Research

The Defendants objected to seventeen hours of research by Attorney Friedman. *Defs.' Opp'n* at 11. In its reply, the Plaintiff responded to the Defendants' concerns.

*Pl.'s Reply* at 6. The Court finds the unexplained research satisfactorily explained and overrules the Defendants' objection.

### f. Duplication or Inefficiency

The Defendants object to perceived duplication or inefficiency when "multiple attorneys" seem to have duplicated the work of others, when some entries seem "excessive for the task," and when two lawyers were present and charging for the same event. *Defs.' Opp'n* at 11-14. The Plaintiff explain that this was "fast-paced litigation" and required "the participation of both Attorney Friedman and Attorney McDonald at the majority of client meetings and strategy sessions." *Pl.'s Reply* at 7. The Plaintiff defends the actual time spent on different legal tasks, including drafting a reply to the Defendants' opposition to CCWI's motion for preliminary injunction. *Id.*

As this Court recently observed, the First Circuit has long recognized that "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic." *Archambault*, 2016 U.S. Dist. LEXIS at *13 (quoting *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001)). The First Circuit went on to write that "[c]onsequently, the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing." *Id.* At the same time, the First Circuit has cautioned that fee-shifting statutes are not intended "to serve as full employment or continuing education programs for lawyers and paralegals" and a "court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Id.*

Applying *Gay Officers*, the Court does not consider the objected to time inappropriate nor the objected to staffing excessive. The Court overrules the Defendants' objections on this issue.

### g. The Fee Petition

Based on its earlier ruling in *Archambault*, the Court authorizes a maximum attorney rate of $210 for the Plaintiff's pursuit of its attorney's fees and costs. *Archambault*, 2016 U.S. Dist. LEXIS 146597, at *19-20. This is consistent with First Circuit authority. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (time spent on fee litigation should be compensated "at lower rates than those deemed reasonable for the main litigation"). At the same time, under First Circuit law a prevailing party is "normally entitled to attorneys' fees incurred in the pursuit of fees" under a fee-shifting statute. *Id.* The Court generally approves of the time the Plaintiff's attorneys have spent on this petition.

However, the Court does not approve of whatever time it took the Plaintiff's attorneys to eliminate duplicate entries and to accede to the lower rate for travel time. These items should have been caught before the bill was submitted and therefore the Defendants should not have to pay the attorneys for conceding that they should not have billed certain items. The Court cannot tell how much time the Plaintiff's lawyers spent analyzing and responding to the items on which they conceded, but the Court is confident that they can make a good faith estimate.

Also, the Court does not approve whatever time it took the Plaintiff's lawyers to research and present their claim that the Court should enforce the fee settlement.

17

The Plaintiff presented no evidence that the state attorney had actual authority to make the settlement offer and, in any event, the Plaintiff did not prevail on that aspect of the claim. Again, the Court charges the Plaintiff's attorneys with the task of making a good faith estimate as to the amount of time and fees attributable to that losing argument and eliminating that charge from their claim.

Otherwise, the Court approves the time Plaintiff's lawyers spent pursuing the attorney's fee petition, except at the hourly rate of $210.

## IV. CONCLUSION

The Court GRANTS in part and DENIES in part Plaintiff's Motion for Attorney's Fees and Costs (ECF No. 70). Rather than order a specific figure which could be subject to computation error, the Court charges the attorneys to attempt to arrive at an agreed-upon figure in accordance with the conclusions of this Order. In the event the parties are unable to arrive at an agreement, they are free to return to the Court for clarification.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2018